Welcome to the second panel sitting in February because of Lynch and Mardi Gras. Some of us have having a double dip in being here in February for oral arguments. Looks like I just left here and I did. Nonetheless, we've got an interesting array of cases. I'm grateful this morning to be sitting with Judge Jack Weiner. He's still from my hometown in Shreveport, but he swallowed the bug and he's been here in New Orleans for a while, but I'm still claiming him as my Shreveport compadre. Glad to have him here and then Judge Southwick from Jackson, Mississippi. So we have arguments through Wednesday. So today we have three cases on the docket. Most likely we'll do two and we'll see how it recess in between. All right. First case up is Coleman versus Chevron Philips. 24 days to 0244 Council. May it please the court. Good morning. My name is Michael Sankey and I present the appellate Ronnie Coleman. Chevron's reason for terminating Coleman was pretext for racial discrimination. A quick question. Were you counsel in the trial court? No, I wasn't, Your Honor. Always like to know, especially on the summary judgment matters to know who was there. Okay. I mean, that's not a negative. I just want to know for purposes of questions that may be expressed on. Thank you, Your Honor. So I have three reasons why Chevron's reason for terminating Coleman was pretext. First, a similarly situated white employee passed a walk through in 15 minutes without a certified trainer. That employee was Kenny Clark. He was a younger white co worker at Plant six. He was given a 15 minute walk through by a non certified operator, and he passed. In contrast, Coleman had to go through four walk throughs, each lasting over three hours. Cut to the chase. You know, we've read the brief thoroughly and a good bit of what's in the record, etcetera. So this one's up here on summary judgment. It's the familiar standard, etcetera. So within that scheme honing in on, you know, the reversible error within the rule 56. What are the genuine issues of material fact that you allege and why? Yes, Your Honor. So there's there's three here. First, um, is he was replaced by a, um, a white cop co worker. Um, you know, the other fact is he was made to go through this long walk through product process multiple times, whereas the white co worker only had to go through a 15 minute process. Moreover, we have his direct supervisor making racially charged comments to him throughout the year that he was employed at Plant six. Um, this same supervisor was the person who conducted his first walk through and failed him. Moreover, um, Chevron failed to train Coleman in accordance with their standards. Um, at one point, um, Coleman said he didn't even know who his trainer was throughout the year. Moreover, after he failed his first walk through, uh, Chevron was supposed to put him on a remediation plan, which they they did not do. Also, there were four walk throughs. After each one, Chevron stated that they would provide comments to Coleman about the walk through, and that never happened. So taking all these facts together viewed and like most favorable to Coleman, we contend that these facts, each of these facts alone would create a genuine dispute of material fact. However, um, put put them all together, and we believe it bolsters the case that, you know, these things will create that dispute. Let me ask you, did Judge Rosenthal ever make a finding, uh, of where the client was a decision maker on this, on the termination? He was the initial, he was a supervisor. He was involved in the first walk through. Problems arose. Uh, the evidence in front of the district court was he was removed from the, in some way. So I was wondering, was there ever a finding of what his role ultimately was, or flip side, who the decision makers were on the termination? Yes. The, uh, is that in the district court's order somewhere, or finding somewhere? I, I would have to, um, look and see, um. Well, that's fine. There's a lot of facts in this case. I just wonder if you recall if that was ever found, because it does seem to me there is, you know, certainly an argument by, uh, opposing counsel that the client was out of the picture, and whatever his comments have been, and whatever his role may have been in the first walk through, and other matters, becomes irrelevant. You got, one way or another, whether it's what Judge Rosenthal found or not, what can you tell me is in the evidence created, do you know any material fact that the client had some impact on the decision? Yes, Your Honor. So there, there is evidence that, um, the court heard evidence of, well, the evidence was stricken from Coleman's affidavit, and I, I do plan to address that here next, Your Honor, but essentially, um. That's not the question. The question is whether the client was a decision maker, and I'm intrigued that you don't know the answer to that question. Well, my answer would be, Your Honor, is he was a decision maker because, um, he was put in charge, or he was supposed to assign a trainer. He was the supervisor of Coleman throughout the year while he was supposed to be, you know, he conducted his first walk through, um, with him, and failed him, and, you know . . . The counsel opposite says he wasn't the decision maker, so you say that he was, and Judge Safra's question was, did Judge Rosenthal ever make a firm determination, one way or another, as to whether he was or wasn't, such that, you know, you could make an argument that she got it wrong, and so, I mean, that's the question. They say he wasn't. You say he was. What's the evidence that if we look, you know, we'd be able to determine it? Did she make that finding? Was that part of her error, not making it? What was the argument made below? I'm not aware that he made that finding, Your Honor. She. Or she. I'm sorry, Your Honor. I'm not aware that he made, or she made that finding. However, I can tell you that the, you know, the evidence in the record shows that, you know, Wayne Kline was a decision maker over Coleman. He was a fellow supervisor. Well, let me ask you, one of the things that she struck were statements that Coleman basically was in charge of the place. One of the first statements, been working there 30 years. He's the person that makes that plant, particular plant, function. She struck that as, and so that's a different question altogether, but is that the evidence you're talking about that shows Coleman was a decision maker, that he basically was in charge of the plant and, and ergo, he, he was a decision maker for firing people who work there? Is that, I mean, I'm not trying to put words in your mouth. I'm just trying to advance this. Where are you on saying there's evidence that Coleman made the decision or affected the decision? Yes, Your Honor. Coleman was involved, but that Kline was a decision maker. The, the, the evidence is the stricken statement that says that Kline was a supervisor and the supervisors work in conjunction with one another and they don't make a decision, you know, without the, um, the other supervisors. We have a lot of other things to discuss. Why don't you move on from that? Yes, Your Honor. Moving on to the stricken portions of the affidavits. There were multiple portions of the affidavits that were stricken. Um, there are portions of Coleman's affidavit. There are portions of two other affidavits. Um, uh, the Winkleman and Hall affidavits. And in the court struck the entire Norris affidavit. So the first one is, um, the district court struck portions of Coleman's affidavit for not having knowledge. And, but we say that the corporate employee rule would establish a basis for Coleman's knowledge for those stricken statements in the affidavit. Um, and the evidence that is, um, so Coleman, he was a corporate employee and the stricken statements were regarding Kenny Clark and Kevin Cochran. So both of those individuals were trainers on reactors. Um, and Coleman worked with those individuals. They, um, they knew about Coleman's progress with his training. Um, and so, you know, based upon him working with them, neither one of them, she said, had personal knowledge, right? They just said in the affidavits they were quote familiar, close quote, right? So I believe that was the Winkleman and Hall affidavits. Your Honor, this is Coleman's testimony in his affidavit about, um, Kenny Clark and Kevin Cochran. And he's making statements about, you know, their situation throughout the year. And so, so in here, Coleman, you know, he interacted with them frequently. So the propositions that he states of them in his affidavit would be within his knowledge. Even if those are in, I mean, where does that get you though? I mean, what is some and some error, but is it harmless? I mean, where does it get you? What's your strongest argument for reversal? I mean, you're going through what's there, it's summary judgment, the district court sifted through it. I mean, what's your strongest argument for reversible error? You know, not sort of parsing through the, through the affidavit. So she struck paragraph 19 and 20. You know, the affidavits seem to be keys to the case sham affidavit. What's your your arguments about that? The argument is those statements further bolster the claims about the race discrimination. Um, and they further lead to create disputes of material fact for that claim. Your honor. That's just not giving me traction. I mean, the rub here in the briefs is, is you say that the 20 would not contradictory. She says they were. You say that they were surpluses. At least that's what the brief said. But you're not making an argument now. I mean, you're not making that argument now. So I'm trying to get from you. I mean, where's the error? She says she struck it under dough and says no, this is contradictory. When he took the deposition, he said, to the best of my knowledge, after David comes forth with other statements, your argument is that that surplus is not contradictory. So I mean, we gave you all argument for you to be able to tell us why her termination is reversible error. Yes, your honor. And I can address that if I may. Oh, it's your time. I'm just saying you're here. We read all the stuff, you know, so we know what's in there. So, um, for the contradictory argument. Um, yes, I am saying that it's supplemental. And what she struck as supplemental are more racially charged statements by Wayne Klein. And what I'm saying is I she extended dough to supplementary statements as opposed to contradictory statements. And we cited, um, S. W. S. Erectors for the proposition that you can, um, can't contradict. However, you can supplement. And, you know, that case said you can supplement with additional facts. And this is and in the affidavit, he did add more facts, more, more evidence and statements of racially charged language by Wayne Klein, a supervisor. And so because she and because he didn't remember that the deposition doesn't preclude him from iterating it later. Is that what you're saying? Yes, your honor. Because the overarching testimony at the position was about racially charged language directed at him. Um, but from Wayne Klein. So he in his affidavit, he just said, These are more statements that were made to me. I'm not hearing very well today. And you may have already mentioned this. But why should we find that Klein had decision making authority over Coleman's discharge when you only took part in Coleman's first walk through exam? Yes, your honor. So you should find that way because Klein was supposed to the year that he was working at Plant six. Klein was supposed to assign him a trainer. Um, Klein was the overall supervisor of the plant. Um, and he should have overseen Coleman's training. And that didn't happen. Coleman did not know who his trainer was. Then Klein, um, you know, uh, does his first walk through and and fails him. Coleman was not put on a remediation plan. He didn't know what he needed to do after these walk throughs. So Klein has been involved throughout the year that Coleman was, um, working and training at the plant. And the record reflects this. Yes, your honor. Yeah. And moving on to, um, we also, um, would like to state that the corporate employee rule would also apply to the David Winkleman Hall affidavits. Um, they're also, um, there are corporate employees. They attested to the fact that they had knowledge of the training procedures, and they had knowledge of Coleman's, um, what happened to him throughout the year that he was at plant six. Um, but the portions that were struck were based on not having knowledge, and we would ask court to hold that was an abuse of discretion. And I believe I'm out of time. Your honors. All right, sir. You have preserved your rebuttal time to come. Yes, your honor. Thank you. All right. We're from Miss Williams. Issue the same question. Were you counsel below? Yes, your honor. I was good. Good. I don't know if that's good for me. You know, it's sometimes helpful to know who was on the ground when, you know, things, you know, occurrence so we can figure it out. But anyway, press ahead. May please the court. Good morning, your honors. My name is Marlene Williams. And along with my colleague, Brooke Jones, I represent the appellee Chevron Phillips Chemical Company. For the sake of brevity, I'll refer to Chevron Phillips chemical as C. P. Kim throughout today's argument. Um, just briefly, C. P. Kim gave appellant an unprecedented four opportunities to pass a walk a required walk through to qualify as a process operator at its Pasadena Plastics Complex. It's a role that the appellant admits was extremely safety sensitive and could have catastrophic results if something went wrong. Rather than accept the undisputed fact that he did not, he repeatedly failed to perform and pass this important step of the qualification process. Mr Coleman, um, tries to piece together race discrimination and age discrimination claims through a series of defective affidavits, which will discuss today as well as unsupported assertions about pretext. I think one of the key factors that the panel has already sort of alluded to here is the question of the decision maker. The record is clear in this case that the decision maker, um, as Judge Rosenthal found, was not Wayne Klein. In fact, the record is pretty back up just a minute. Only three words back up as the judge found. Did she ever either including or excluding? Did she ever say, I find that Klein was not involved in the decision? Or did she find I find these four people were involved and clients not on the list? Did she do either? There is, and I apologize because I don't have the precise citation, but there is a statement in her ruling on the motion for summary judgment where she refers to Howard Williams, the African American employee who oversaw and assessed Mr Coleman for his 2nd, 3rd and 4th walkthroughs, um, and was also older, African American and older than Mr Mr Coleman. She, her determination was that Mr Williams was the decision maker with respect to how he performed on each of the pertinent walkthroughs two through four and ultimately led to the decision to terminate his his employment. So there is a finding in the record as to a decision maker, and Judge Rosenthal clearly says that it was. I mean, she doesn't say it's not Klein. She identifies it as Howard Williams. If we say there's direct evidence here, and I'm sure you have arguments why there's not. But if we find this direct evidence here of  uh, is a finding or absence of evidence that Klein was a decision maker. If the direct evidence applies to Klein, would that mean that the direct evidence is irrelevant? You must have direct evidence of a decision maker covering all the bases. Yes, Your Honor. So a couple of things. I appellant has not argued the direct evidence issue in this. We talk about oral arguments in the briefs. You can't carry everything in oral argument. Fair enough, Your Honor. But if this court were to find that there's direct evidence of discrimination related to Klein statements, um, that still is not sufficient for, I think, a conclude to reach a conclusion that there was discriminatory animus related to the decisions that are at issue here. Klein participated in only one of the walkthroughs that ultimately was relevant to the termination decision. He was removed from that once Mr Coleman complained about some of the statements that he made. And from that point forward, there were two other African American individuals who participated in walkthroughs. Um, one was Mar Marlon Jordan, who participated in the second walkthrough, along with Howard Williams, um, and a third individual. And then Howard Williams continued to participate in the third and fourth. There is nothing in the in the record that, uh, supports the conclusion that Klein's, uh, comments influenced any decision or that any input that he had regarding Mr Coleman's performance was at all considered when the decision was made to terminate his employment after the failed, uh, fourth walkthrough. Um, well, let's roll back. I mean, she says at page 24, Coleman has not raised a genuine, factual, genuine factual dispute regarding whether C.P. Kim used biased walkthroughs. And then she says, Klein, the only person who Coleman alleges was racially motivated, participated only in Coleman's first walk through docket entry 19.1. So is that the determination that you're relying on in terms of not Klein, but someone else? That's right, Your Honor. Klein was essentially removed from the consideration after the first walk through. He got Mr Coleman was effectively given a new opportunity with the second walk through with the third walk through and with the fourth walk through. And Mr Klein was not a part of any of those assessments at all. Um, and there's nothing in the record, moreover, that suggests that any opinion that Mr Klein had of Mr Coleman and his performance throughout this process somehow influenced the individuals who actually or Mr Williams, Mr Williams's assessment when he was evaluating him through the walkthroughs and then ultimately the termination decision for purposes of this appeal is the fourth walk through the seminal event that's closely tied to the termination. In other words, is it that the four walk through that's, you know, at issue in terms of him getting determination? The other things, of course, matter in sequence. But is it the fourth walk through that we should be honing in on on who said what and so forth? That's correct, Your Honor. And what's important about that, too, is that the fourth walk through was unprecedented. There is nothing in the record. Um, despite Mr Coleman's complaints about alleged disparate treatment, there is nothing in the record that shows that anyone has ever been given a fourth walk through and a fourth opportunity to prove that they had mastered the material in order to qualify, you know, to ultimately qualify for the process operator position. And so now we're standing the fourth walk through counsel opposite argues, you know, when he started out, he's saying, you know, there was a similarly situated, you know, white person about the number of walk through. But the argument said there was a person who was white who was similarly situated, but, you know, was not treated the same. Does the how many walk throughs matter in terms of the argument he's making? I don't think that it matters here, Your Honor, because there's nothing in the record to show that if you assume that Kenny Clark is a proper comparator in this instance, and we contend that he isn't for a number of reasons, including the fact that Mr Coleman admitted himself that he really didn't have any information about how Kenny Clark's training went because Kenny Clark passed training before Mr Coleman ever arrived in plant six. But if you assume and you look at Kenny Clark situation, there is nothing in the record that indicates that Kenny Clark struggled in previous walk throughs that he was given an opportunity repeatedly to conduct walk throughs or that he, you know, in this case, failed walk throughs but was retained as an employee. And so we believe that the proper basis to compare is not the fact that Kenny Clark only had one walk through. He had one walk through because that was all that he needed. Mr Coleman had four walk throughs because the company continued to try to give him an opportunity to prove that he had mastered the material. Um, and there's just no evidence that anybody, Kenny Clark, Kenny, Kenny Clark or otherwise failed a fourth walk through but still kept their employment. Let's dial back to this direct evidence of the matter. Um, the trial court found there was not direct evidence and cited cases saying, you know, Fifth Circuit said direct evidence is rare. In this case, none. C. P. Kim acknowledges, concedes that Mr Coleman established by circumstantial evidence, the primary faces. So you don't dispute that that piece before we get there. But back on the direct evidence. What is your understanding of the argument council office making? What was the direct evidence in this case that makes the difference? Does that go to the after that? What's your understanding of their position of what the direct evidence is in the case? I believe that they're under their position is that the direct evidence relates to, um, Wayne Klein and the statements that Wayne Klein or that Mr Coleman attributed to Wayne Klein. Um, I'm not aware that there's any other indication that, you know, there's some other piece of direct evidence outside of these series of comments that he says Wayne Klein made when he arrived in plant six. So if the determination is that Wayne Klein was not the decision maker, I think this is the question that Southwick was asking earlier. I don't want to misstate him. But if Klein wasn't the decision maker, is it irrelevant? Is it marginal? Is minimally probative? Uh, if he didn't make the decision, our position is that we think it's irrelevant, Your Honor. We think it's supported by, you know, the arguments that we've made in our brief in the district court's finding. Even if you assume that Wayne Klein made some or all of these statements, the fact that there is no connection between Mr Klein and the ultimate decision to terminate really, um, erotic or eliminates the argument that there is direct evidence of a discriminatory animus with respect to the decision that's that's at issue here. Um, the other defects with respect to the evidence related to Mr Klein's statements, which I think Judge Rosenthal discussed, is that some of those statements are imprecise and they don't really relate to the decisions that were at issue. Um, and even, you know, if we conceded that some of the remarks are, as I think Judge Rosenthal described them, nasty remarks. They don't really relate to the decision related to his performance or and certainly not to the decision to terminate his employment. Um, and there's no indication in the record either from Mr Coleman as to when any of these statements happened. Mr Coleman, I think has broadly stated that these statements were made when he came to plant six. Well, he arrived in plant six in January of 2021. He was terminated at the end of 2021 or early 20 January 2022. There are and his first walk through with Mr Klein happened in August of 2021. Um, so there are months, maybe possibly an entire year that actually passed between these alleged discriminatory comments and the ultimate decision to terminate his employment that he's complaining about here. And so there are a lot of things that you know, we think the record shows disconnects those statements from a determination that they are direct evidence related to his determination decision in this case. If I may, I think briefly also address some of the evidentiary rulings that Judge Rosenthal made. Um, as this court is well aware, um, Judge Rosenthal's decisions with respect to the affidavits that are issue is reviewed under an abusive discretion standard. Judge Rosenthal had broad discretion to evaluate those, uh, affidavits and to determine whether or not all or none of them should have been stricken from the record. In the case of Mr Coleman's affidavits, she made a decision that, um, parts of his affidavit were, um, defective because they were conclusory and lacked personal. Um, he didn't demonstrate personal knowledge of some of the statements that were made, including with respect to the alleged comparators. There is nothing, no argument that the appellant has made, um, in support of this appeal that has explained why this court should, um, you know, reverse from the longstanding rule that the district court has, you know, a broad amount of discretion to make that type of evaluation with respect to, um, those portions of the affidavit. Similarly, with respect to, and we talked about some of the direct evidence, the alleged statements that Mr, um, Klein, that's attributed to Mr. Klein, there are four of those statements, um, that were at issue in Judge Rosenthal's decision on the motion to strike. Um, one of the four of those decisions, um, well, let me back up. Appellant's argument, one of his arguments, um, claiming that Judge Rosenthal made a mistake in this is that he supplemented his discovery in order to make, you know, or identify those additional statements that weren't identified in his deposition. Um, the fact is that only three of the four were supplemented. Um, the one where, pardon my language, where he says, you know, you're a dumbass, I'm going to get you fired, was never revealed in his deposition or in his supplemental discovery. Moreover, the supplemental discovery came after the close of discovery, after we filed our motion for summary judgment. Um, and, um, there is nothing to indicate that Judge Rosenthal, when he took his, when his deposition was taken, you know, when asked the question, he said, you know, as best I can recall, or words to that effect. So, you're arguing that Doe says that if somebody forgets something when the deposition is taken versus nervous or scared, you know, lawyers glowering at him, et cetera, et cetera, you know, and says, well, the best of my knowledge. They don't reflect and later they iterate something that because they forgot or didn't remember it at the time, that that's necessarily contradictory to the point of being, you know, excluded, all points. I mean, Doe doesn't really say that. I know that both of y'all argued, though, but is that what you want us to say that if you had a faulty memory, you don't remember every grammy detail, you know, when your deposition is taken and later, you know, you add on that. Gotcha. Well, Your Honor, we think that this, the record doesn't support the conclusion that he had a faulty memory. What he said, he was asked, Have you identified, you know, all the basis for the discrimination that you're alleging in this case? And he said yes, to the best of my knowledge. He didn't say there. That's all I can recall today. There might be some other things he said, but he did say I used to had some journal I was keeping. I no longer have access to it. That has a complete list that was keeping the record. So it seems to be acknowledged that at this stage in his deposition with nobody glowering at him, I'm sure, uh, he could not recall. He didn't say that. It seems to me it's the implication on and doesn't S. W. S. Erectors to some extent, open the door to this sort of thing. So long as, uh, it's reasonable to to place this additional information on the basis of you didn't remember the time of the earlier statement or some other very human explanation. Again, Your Honor, we think that this the additional statements that he made didn't supplement testimony that he had already given regarding, for example, you know what? There was one alleged statement. You know, I don't believe in lives matter. If that if he had supplemented related to the context of that alleged statement, we think that he might have an argument, right? That it was supplemental here. He contradicted himself when he said this is everything that I have to the best of my knowledge and then added on three or four additional statements, including one where he alleges Mr Klein, you know, threatened to get him fired. Um, and so we think that this falls squarely under the dough case where it contradict it. It doesn't necessarily contradict the testimony he gave about the statements that he identified. It contradicts his testimony that he had shared with us everything that formed the basis of his discrimination case. And so, for that reason, we believe assuming argue window to pound hell, not saying it would assume in the pound hell, notwithstanding the abuse of discretion, strong standard in terms of the issue that top court read no or whichever case too closely error in terms of the other two, just assuming that we don't want to say it's true. What is that leave you in terms of the balance of the case itself? Well, we think ultimately it doesn't affect the ultimate, maybe the overarching question of whether or not he can establish pretext in this case, because as we've discussed earlier, um, even if you assume that Wayne Klein made all of those statements with the exception of the you're a dumb ass, I'm going to get you fired statement as Judge Rosenthal identified. None of those statements relate to a particular employment decision or his assessment of his performance. Um, and ultimately, again, as we've discussed, there's no evidence in the record that Mr Klein was actually the decision maker with respect to the action that's at issue here, his termination and the assessment of the final walk through that that led to his termination. Assuming that he said it and assuming your position that he wasn't in the last decision maker. Is there evidence in the record, for example, that though Klein said it, he may have repeated his statements to the ones who were the decision maker, thus affecting their decision because he said it. You follow what I'm saying? I understand you, Your Honor. And no, there is nothing in the record that would that indicates that Klein ever did anything like that, where he said something and any of the decision makers were somehow aware of it or influenced by the things that he said, particularly, you know, I'm going to get you fired. There's absolutely zero evidence in the record that Howard Williams, again, an older African American gentleman, was influenced by the nasty remarks that are attributed to Wayne Klein. So, um, for that reason, again, we believe that even if you accept the decisions that or the comments that were made by Mr Klein, they don't lead to a decision or they should not lead to a decision that he's met his burden of showing, you know, providing substantial evidence of pretext that would create an inference of discrimination in this case. So is Williams the ultimate decision maker here? In this record, as Judge Rosenthal found? Yes, Your Honor. He is the decision maker. Let me ask you, uh, if two evaluators disagree on the employees performance during the walkthrough, how do they determine whether they pass the test? Your Honor, there's not any evidence in the record of any disagreement, and so I don't know that I can fully opine on how that disagreement might get resolved in the case of Mr Coleman. And I'm sorry I'm out of time. May I can in the case of Mr Coleman, Mr. The only time that he had multiple evaluators was during his first walk through, and I believe his second walk through. I think the third and final walk through, if I'm remembering the record correctly, included Mr Williams only, and there's no indication that he had any, you know, there was any confusion about his assessment. The record actually shows, um, details of how Mr Williams assessed Mr Coleman during the third and fourth walk through, and there's no indication that there had been any disagreement among anyone who was evaluating him at the time. Did Wayne Klein have any authority or part in Coleman's firing? Well, when he, no, Your Honor, when he was hired, he was originally hired in November 2019 in a different part of the plant. He voluntarily put in a bid to transfer to Plant 6, which is when he was assigned and began working with Wayne Klein. Okay. Thank you, Your Honor. All right. Thank you. You have rebuttal. Yes, Your Honor. First, if I may address her comment about the statements about, you know, the supplemental statements. She said that the statement that, and pardon my language, Your Honor, you are a dumbass and I will get you fired, doesn't relate back to the deposition. However, there were a couple statements that Coleman made about Wayne Klein that stated, he said, I guess you did not graduate from elementary school, and did you graduate from high school? So these statements tend to relate to that statement. But let's assume that, you know, the panel agrees with you, whatever, that district court got it wrong, notwithstanding his discretion. You know, let's say, don't spend your whole four minutes talking about that, but assuming that's the case, come back to the point. They're arguing and she says Klein was not the decision maker, and Judge Sophie asked that earlier. So even if we bear down on Klein, if Williams was the ultimate decision maker, I mean, what's your best argument, you know, for real? Just putting aside everything you've said, not giving it up, but we got you on the affidavit and his statements, etc. But getting to the core of the case, if Klein wasn't the decision maker, where does that leave your, quote, direct evidence, and then just come back to, you know, the walkthrough and so forth, so we know where you are? Yes, Your Honor. So what I will say is, um, after Coleman did a walkthrough with Williams, Coleman asked Williams how he did on his walkthrough, and Williams told him he did well. But Coleman subsequently failed that walkthrough. So that would indicate that Williams is not the decision maker, because if Williams thought he did well, then he would likely . . . Well, who is the decision maker? Well, Your Honor, we contend, and we go back to Wayne Klein, because . . . Just answer my question. Who is the decision maker? Don't tell me what's in the briefs. Don't tell me what you argued. You tell me who was the ultimate decision maker on Mr. Coleman's termination. Ultimately, it would likely be the person involved, you know, in HR, after they, you know, review the walkthroughs. You've got to do better than that. I'm asking you a flat-footed question, and you're looking me straight in the eye. Now, tell me who you say. You represent Mr. Coleman. This is your shot. Who was the decision maker? Wayne Klein was the decision maker. Based on what in the record? What? Is his name on a document? Don't set an argument. I mean, tell us. It's a record, and we're not cherry about reversing a summary judgment, but what's in this record? We've read it. I've read Judge Rosenthal's ruling over and over. Just tell us. What's in the record will lead us to the conclusion that Klein was a decision maker, not an argument. And the evidence is the statement made that Wayne Klein was a supervisor, and the supervisors act in conjunction with one another, and they don't do anything without each other. Judge Rosenthal makes a finding on page 24 of her ruling that Klein was only involved in the first walkthrough. Okay, so for us to say that it's reversible error, that determination she made on the record, you tell me what's your best case and what in the record says that's reversible error. That's all I'm asking. I mean, it's not an unfriendly question, but it's the only way you're going to get relief. Yes, I understand, Your Honor. And if I may, I can cite to a couple cases where the supervisor . . . I'll go through these. So the first one is Willis v. Clayco Corp. Madam Court, give him two minutes, more. And in that, Willis received a disciplinary warning, and the evidence showed that his supervisor made racially . . . racial comments about him. He said, if we have to find a reason . . . I'm just asking questions. What role did Williams play here? Williams is a . . . he's a training coordinator. He did the last walkthroughs, correct? He did, Your Honor. All right. Counsel Oppson says Williams was the decision-maker on determination. What in the record controverts their argument that that's the situation? That is Williams' comment to Coleman, after the walkthrough, that he thought he did well. Because . . . How does that answer that he was a decision-maker? You're not answering my question. Because if he thought he did well, then he would have passed. But he didn't pass. And because he didn't pass the walkthrough, that would lead to the conclusion that the decision was made elsewhere. Or that Williams was being kind to the person standing next to him when he asked how well he had done. I mean, I don't know. It seems ambiguous. It seems to me some evidence needs to undermine the evidence that was before on summary judgment, the district court, who made the decision contrary to what you're saying. And I understand that, Your Honor. It seems like you're creating . . . there's uncertainty that it was Williams because of that statement. Well, maybe. But you still need some evidence, I think. Yes. And what I'd go back to is the totality of the evidence and the comparator, which is the walkthroughs in and of themselves. Four walkthroughs, three hours long. Whereas the white employee had a 15-minute walkthrough, no supervisors, non-certified operator who passed him. Williams wasn't given that opportunity. He had to go through these lengthy walkthroughs. And I believe I have 30 more seconds. And I'd like to also respond to another thing that counsel said. She mentioned that Williams was an older African-American individual. But we don't know of any minority that would . . . you know, that being the case, that would negate any discrimination. And I believe that's all my time, Your Honor. Okay. All right. We appreciate counsel on both sides. The briefs are full. The record is there. We've looked at most of it before, but we'll look at it again and we'll get it decided. Appreciate your argument. Thank you.